# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| In re<br><br>Salvatore John Rigoroso,<br><br>                                      Debtor. | C/A No. 10-05259-DD<br><br>Adv. Pro. No. 10-80168-DD<br><br>Chapter 7 |
| Automotive Finance Corporation,<br><br>                                      Plaintiff,<br><br>v.<br><br>Salvatore John Rigoroso,<br><br>                                      Defendant. | **ORDER GRANTING PARTIAL SUMMARY JUDGMENT** |

This matter is before the court on a Motion for Partial Summary Judgment ("Motion") filed by Automotive Finance Corporation ("Plaintiff") on March 21, 2011. Salvatore John Rigoroso ("Debtor") filed a Reply on April 7, 2011. A hearing was held on April 19, 2011. Pursuant to Federal Rule of Civil Procedure 52, which is made applicable to this matter by Federal Rule of Bankruptcy Procedure 7052, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

Debtor was the President of Old Towne Auto Sales, Inc. ("Old Towne"), a car dealership located in Summerville, South Carolina. Old Towne entered into a floor plan financing agreement with Plaintiff in July 2006. Debtor negotiated and signed the agreement on behalf of Old Towne. Debtor also signed a guaranty for the agreement. Pursuant to the agreement, Plaintiff would advance money to Old Towne to purchase automobiles for resale. Once the vehicles were sold, Old Towne was required to hold the proceeds from the vehicle sales in trust

for Plaintiff and pay those funds to Plaintiff. At some point prior to 2009, Debtor sold five vehicles subject to the floor plan agreement but failed to remit any proceeds to Plaintiff.

Debtor spent the entirety of 2009 incarcerated. During this time, Plaintiff commenced a civil action against Debtor in Indiana state court, alleging breach of contract, deception and fraud, false pretenses, false representations, or actual fraud arising from the sale of vehicles subject to the parties' floor plan financing agreement. On January 15, 2010, the Indiana court entered a default judgment against Debtor in the amount of $281,930.27. This amount represents the amount owed to Plaintiff on the five vehicles sold, plus interest, fees, and penalties, trebled, pursuant to Indiana Code § 34-24-3-1.[1] Debtor contends that he did not receive proper service of this lawsuit, and that he did not receive notice of it until "it was all over." However, the default judgment entered by the Indiana court states that both Old Towne and Debtor were "duly served with process."

Debtor filed his chapter 7 case on July 23, 2010. His Schedule D shows no secured debt, but his Schedule F shows $3,834,499.02 of unsecured debt, which appears to consist largely of business-related debt. Debtor received a discharge on December 20, 2010, subject to any pending objections to the dischargeability of a particular debt. This adversary proceeding was filed November 15, 2010 by Plaintiff, requesting that the debt owed to it by Debtor be declared nondischargeable under 11 U.S.C. § 523(a)(2)(A), (a)(4), and (a)(6). Debtor filed his Answer to the Complaint on December 17, 2010, admitting many of the allegations in the Complaint.

In its various filings, Plaintiff set forth facts relating to five specifically identified vehicles that were subject to Plaintiff's lien and were sold by Debtor without the authorization of or repayment to Plaintiff. In contrast, Debtor's filings simply provide that he "sold vehicles with

---

[1] That code section provides for treble damages to be awarded in a civil action arising from a pecuniary loss suffered as a result of the defendant's violation of certain provisions of the criminal code.

Automotive Finance Corporation Management at the Charleston Auto Auction." Debtor's Reply, docket no. 17. Debtor did not provide specific identifying information with respect to the vehicles at issue in any of his filings, but simply referred to them throughout as "vehicles" or "secured vehicles."

## CONCLUSIONS OF LAW

### I. Summary Judgment Standard

Rule 7056 of the Federal Rules of Bankruptcy Procedure states that Rule 56 of the Federal Rules of Civil Procedure governs summary judgment in adversary proceedings. Fed. R. Civ. P. 56 provides, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When considering a summary judgment motion, the court should look at "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." *In re Proveaux*, No. 07-05384-JW, slip op., at 5 (Bankr. D.S.C. Mar. 31, 2008). If the movant sets forth evidence sufficient to establish his right to judgment, "the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." *Id.* (quoting *In re Dig It, Inc.*, 129 B.R. 65, 66 (Bankr. D.S.C. 1991)). The non-movant cannot simply rely on his pleadings or "mere assertions of counsel." *Id. See also In re McNallen*, 62 F.3d 619, 623–24 (4th Cir. 1995) ("[A party] may not rest on his pleadings, but rather must show that specific, material facts exist that give rise to a genuine triable issue."). A court must "view the facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *United Rentals, Inc. v. Angell*, 592 F.3d 525, 530 (4th Cir. 2010).

**II. Nondischargeability under 11 U.S.C. § 523(a)(6)**

Plaintiff alleges that it is entitled to summary judgment on its section 523(a)(6) cause of action because Debtor knew that he was required to pay Plaintiff the sale proceeds upon sale of the vehicles subject to Plaintiff's lien but did not do so.[2]  Plaintiff contends that this knowing failure to remit the proceeds constitutes a willful and malicious injury under section 523(a)(6). Section 523(a)(6) provides, "A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt – . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

Outside the floor plan financing context, courts have held that an injury that was "wrongful and without just cause or excuse, even in the absence of personal hatred, spite or ill-will," meets the malice requirement.  4 Collier on Bankruptcy ¶ 523.12[2].   As to the willfulness requirement, a willful act is a "deliberate and intentional act that necessarily leads to injury." *Id.* "Most courts have held that a wrongful act done intentionally, which necessarily produces harm or which has a substantial certainty of causing harm and is without just cause or excuse" meets the standard for nondischargeability under section 523(a)(6). *Id.*

Numerous courts have also addressed a nondischargeability action in the context of a floor plan financing agreement.  Many of these courts hold that a debtor's knowing sale of the creditor's collateral and knowing failure to repay the creditor constitutes a willful and malicious injury for purposes of section 523(a)(6).  *See Ford Motor Credit Co. v. Owens*, 807 F.2d 1556, 1559 (11th Cir. 1987) (considering nearly identical situation to the present case and finding debt

---

[2] Plaintiff's counsel stated at the hearing on Plaintiff's Motion that although it was only asking for partial summary judgment, in the event that the Court granted Plaintiff's Motion, there would be no need to proceed on Plaintiff's section 523(a)(2)(A) and (a)(4) causes of action.  Plaintiff's counsel also indicated that if the Court found the Indiana judgment was not entitled to collateral estoppel effect, Plaintiff would still not wish to proceed to trial on the adversary proceeding.  Thus, the granting of Plaintiff's Motion in this Order will completely dispose of Plaintiff's adversary proceeding.

owed to floor plan financer nondischargeable); *In re Therous*, No. 94-50530, 1995 WL 103342, at *3 (5th Cir. Feb. 27, 1995) (affirming bankruptcy court's finding that the knowing sale of mobile homes out of trust was willful and malicious); *Labrecque v. Armada Mfg. Co.*, No. 5:98-CV-824-BO(3), 1999 WL 1939980 (E.D.N.C. May 3, 1999) (holding that the knowing sale of a boat subject to creditor's lien and the subsequent retention of proceeds qualified as willful and malicious for purposes of section 523(a)(6)); *United Bank of Southgate v. Nelson*, 35 B.R. 766, 775 (N.D. Ill. 1983) ("A situation in which a debtor sells secured property knowing that the sale would injure the creditor by depriving him of his collateral and proceeds in the face of that knowledge is the type of debt Congress intended to make non-dischargeable under § 523(a)(6)."); *In re Buck*, 406 B.R. 703, 706 (Bankr. E.D.N.C. 2009) ("In a conversion of collateral case the actual willful injury occurs when the collateral is disposed of, and the proceeds are used for a purpose other than repayment of the debt.").

In the present case, Debtor admitted in his Answer to the Complaint that Plaintiff had a valid security interest in the vehicles, which he knew about, and that he sold the vehicles without Plaintiff's permission. He further admitted that he knew he was required under the parties' floor plan agreement to pay the proceeds to Plaintiff and had the ability to do so, but did not. Further, Debtor's Reply to Plaintiff's Motion is confusing and contains conflicting statements. One of these statements proclaims, "[Debtor] only used the funds for his business and not for his personal use." Debtor's Reply, docket no. 17. A few sentences later, the Reply states, "His accounts were frozen and he was unable to pay anything to Automotive Finance Corporation after that date." *Id.* Debtor's Reply contains several other irrelevant statements, including claims that Debtor did not make false representations, did not take anything from Plaintiff by false pretenses, and did not misappropriate funds. Debtor's Reply also simply states, "There was

no malicious injury to Automotive Finance Corporation." *Id.* Attached to the Reply is an Affidavit of Debtor, which is substantially the same as the Reply.

The Court has considered all documents presented by Debtor in support of denial of Plaintiff's Motion in the light most favorable to Debtor. However, the Court is unable to find any evidence sufficient to create any genuine dispute. Debtor admitted that he knowingly sold vehicles under lien to Plaintiff without Plaintiff's permission and that he knew that he was required to pay the proceeds of those sales to Plaintiff but did not do so. There is some confusion as to what Debtor actually did with the proceeds, as his Reply contains some conflicting information. Additionally, Plaintiff provided detailed facts about vehicles specifically identified in Plaintiff's filings; these facts were sufficient to satisfy Plaintiff's burden with respect to its Motion. In contrast, Debtor's Reply simply set forth general facts without reference to any specific vehicles. At best, his Reply is confusing, and in any event, Debtor has produced no evidence sufficient to rebut Plaintiff's evidence and create a genuine issue of material fact.

While the parties did not appear to dispute that Debtor could be held personally liable for the debt owed to Plaintiff even though the floor plan financing agreement was between Old Towne and Plaintiff, it is appropriate to briefly address the Court's reasons for finding Debtor personally liable on Old Towne's debt.[3] Other courts have routinely found that a debtor who is an officer or director of a corporation can be held personally liable for the tortious acts of the corporation when he actively participated in those acts. *Therous,* 1995 WL 103342, at *4 ("A corporate officer may be held personally liable for a non-dischargeable debt when the officer's conduct is determined to be willful and malicious within the meaning of Section 523(a)(6).");

---

[3] The Court also notes that Debtor personally guarantied this debt; as a result, Debtor would be liable to Plaintiff under the guaranty as well.

*Ford Motor Credit*, 807 F.2d at 1559 (finding debtor-president of car dealership personally liable for the sale of vehicles out of trust and stating, "[B]ankruptcy courts have held that a personal debtor who, as an officer of a corporation, actively participates in the conversion of property which is subject to the security interest of a third party, is personally liable to said party and thus the debt is nondischargeable pursuant to section 523(a)(6).") (citing *Matter of Penning*, 22 B.R. 616, 619 (Bankr. E.D. Mich. 1982); *In re Schwartz*, 36 B.R. 355, 359 (Bankr. E.D.N.Y. 1984); *In re Nicolls*, 42. B.R. 87 (Bankr. N.D. Ill. 1984)). Clearly, Debtor actively participated both in the sale of the vehicles under lien to Plaintiff and the subsequent failure to repay Plaintiff for those vehicles. Debtor presented no evidence or argument that he should not be held personally liable for Old Towne's debt. Debtor is personally liable for the debt owed to Plaintiff, and that debt is nondischargeable in his chapter 7 case under section 523(a)(6).

**III. Collateral Estoppel**

Plaintiff also argues that the Indiana state court default judgment against Debtor is entitled to collateral estoppel effect. This would treble Plaintiff's damages. Debtor claims that he was not properly served in the Indiana state court action; as a result, he argues that the default judgment is not entitled to collateral estoppel effect.

Collateral estoppel prevents relitigation of an issue decided in a previous judicial proceeding, as long as the losing party in the prior proceeding had a "full and fair opportunity" to litigate the issue in the previous case. *McNallen*, 62 F.3d at 624. The United States Supreme Court has stated, "[C]ollateral estoppel principles do indeed apply in discharge exception proceedings pursuant to § 523(a)." *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). In determining whether to give a state court judgment collateral estoppel effect, the Court must

apply the law of the state in which the previous judgment was granted. *McNallen*, 62 F.3d at 624.

Indiana law states that for collateral estoppel to apply, three requirements must be met: (1) the judgment must be a final judgment "on the merits in a court of competent jurisdiction"; (2) there must be "identity of issues"; and (3) the party being estopped was a party or in privity with a party in the prior action. *Garoutte v. Damax, Inc.*, 400 B.R. 208, 212 (S.D. Ind. 2009) (quoting *Sims v. Scopelitis*, 797 N.E.2d 348, 351 (Ind. App. 2003)). Indiana courts also consider whether the losing party had a full and fair opportunity to litigate the issue in the previous case, as well as whether it would be unfair based on the circumstances to give the previous judgment collateral estoppel effect. *Id.* (quoting *Sims v. Scopelitis*, 797 N.E.2d 348, 351 (Ind. App. 2003)).

Plaintiff states in its Motion that Indiana law permits a default judgment to have collateral estoppel effect and as support for this proposition cites *In re Catt*, 368 F.3d 789 (7th Cir. 2004). In that case, a state court default judgment was given collateral estoppel effect in a bankruptcy dischargeability proceeding. However, the state court action was actually initiated by the eventually defaulting party, Catt. *Catt*, 368 F.3d at 790. After he decided to file bankruptcy, he apparently decided not to continue with the state court litigation. *Id.* His attorney then withdrew,[4] and Catt did not attend the scheduled trial. *Id.* Following a short trial, the state court entered a default judgment finding fraud on the part of Catt. *Id.* The Seventh Circuit found that the default judgment was entitled to collateral estoppel effect, because Catt knew about the trial and had no legitimate reason for his absence. The Seventh Circuit stated, "We of course do not embrace a rule that would require giving preclusive effect to findings in every type of case that flunks the 'full and fair hearing' test. If, whether by allowing himself to be defaulted or otherwise, a party has forfeited his right to such a hearing, he cannot complain; but if there is no

---
[4] His motion to withdraw was granted the day before the state court trial was scheduled.

waiver or forfeiture, then of course he can complain." *Catt*, 368 F.3d at 792. *See also In re Staggs*, 178 B.R. 767, 776 and n.6 (Bankr. N.D. Ind. 1994) (decided prior to *Catt*; the court stated, "It is clear that the Indiana courts will not give collateral estoppel effect to a default judgment entered against a defendant who never appeared in the action.") (citing *Porter's S. Shore Cleaners, Inc. v. State*, 512 N.E.2d 895, 898) (Ind. Tax 1987)).

Following the decision in *Catt*, the Bankruptcy Court for the Southern District of Indiana held (in an unreported case) that a default judgment was not entitled to preclusive effect because the defendant had no participation in the state court action. *Nat'l City Bank, Indiana v. Kreitzer (In re Kreitzer)*, No. 04-3095-AJM-7, Adv. Pro. No. 06-50663, 2008 WL 627409, at *3 (Bankr. S.D. Ind. Mar. 6, 2008). In so holding, the bankruptcy court stated:

> Here, nothing in the record suggests that the Debtor responded, answered or otherwise participated in the state court action. In fact, the action was filed against "Paul C. Kreutzer" and, by that point, the Debtor's legal name was "Zachary Nathan Kreutzer". Furthermore, the summons and complaint was served upon "Paul C. Kreutzer c/o SCSD", at the Spencer County Sheriff's Department. Although there is a return of summons that indicates the Debtor was served with the complaint, the fact remains that he did not participate in the prior state court action.

*Id.* Further, it does not appear that any of the Indiana cases cited in *Catt* for the proposition that Indiana law allows default judgments to have collateral estoppel effect dealt with a situation like Debtor's, where the defendant entirely failed to appear or participate in the proceeding.[5]

In the present case, Debtor did not appear at all in the Indiana action. The default judgment entered by the Indiana court contains a statement that Debtor was properly served with the complaint. It is not clear on what basis the court made this determination, but Debtor was apparently incarcerated the entire time the Indiana action was pending, and he disputes that he

---

[5] One of the cases cited, *Progressive Cas. Ins. Co. v. Morris*, 603 N.E.2d 1380 (Ind. App. 1992), involved an insurance company's purposeful failure to defend its insured. Unlike the present case, in that case there was no dispute regarding whether the insurance company was properly served in the state court action.

received any notice of the action until after the default judgment was entered. The waters leading to the proper result here are quite murky, but because there exists a material issue of fact as to service, the Court holds that under the circumstances, it would be unfair and improper to afford the Indiana default judgment collateral estoppel effect. Therefore, the Court will not grant summary judgment on the collateral estoppel issue.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion is granted in part. Plaintiff is entitled to summary judgment on its section 523(a)(6) cause of action. The debt owed by Debtor to Plaintiff in the amount of $108,568.90 is nondischargeable. The previous Indiana default judgment is not entitled to collateral estoppel effect on summary judgment. Based on Plaintiff's stipulation at the hearing on the Motion, this adversary is concluded.

AND IT IS SO ORDERED.

**FILED BY THE COURT**
**04/25/2011**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 04/26/2011